## JONES MOTOR CO. v. J. H. CARR.

Eastern Section. June 15, 1929.

Petition for Certiorari denied by Supreme Court, December 7, 1929.

Burn & Michael, of Sweetwater, for plaintiff in error.

Peace & Sloan, of Madisonville, for defendant in error.

HEISKELL, J. This is an appeal from the action of the circuit court of Monroe county, overruling the motion of the Jones Motor Company to dismiss the petition for certiorari filed by J. H. Carr to bring up a case from a magistrate's court. The sole question is whether or not said petition for certiorari and the proof thereon shows sufficient reason for not appealing. It must be conceded that the petition shows merits, but it is contended that the proceeding shows no such reason by Carr, for not appealing from the judgment rendered against him by the Justice of the Peace, as would support a certiorari.

The petition is as follows:

"Your petitioner, J. H. Carr, respectfully represents to your Honor, that on the 10th day of August, 1928, a judgment was rendered against him by J. R. Love, a Justice of the Peace for Monroe county; for $200 and costs in favor of Jones Motor Company for damages alleged to have been done by petitioner to an automobile of the plaintiff in said suit in a collision between petitioner's automobile and an automobile of plaintiff driven by one Henderson, which collision occurred in the town of Sweetwater at a street crossing;

"That petitioner was cited to appear for trial, as he understood the situation, before W. T. Lenoir, a Justice of the Peace, at his office in the town of Sweetwater for said date of August 10, 1928;

"That, at the time and place fixed for trial he did appear and the trial was had before the said W. T. Lenoir and the said James R. Love, Justices of the Peace as aforesaid, sitting together on the trial, who both heard the proof and found the judgment aforesaid against this petitioner, defendant in said suit;

"Petitioner tried the case under the impression all the time that the case was being heard by the said Lenoir as the Justice and that the said Love was sitting with him, petitioner having as aforesaid understood that he was summoned to appear for trial before the said Lenoir, and who did on the trial of the case assume the role of the real trial justice;

"Petitioner did not know of a transfer of the case to J. R. Love, nor did he know that it was so claimed until after the time had expired for filing bond. The statement to that effect on the judgment was without his knowledge. No consent was requested to that effect of defendant.

"The 10th of August was Friday, and, immediately upon praying the appeal and the granting of the same upon bond being given, petitioner had filled out an appeal bond in due form for the purpose of perfecting said appeal, said bond being in the sum of $250 and conditioned as required by law in such cases;

"Petitioner, under the law having through the 13th of the month in which to perfect his said appeal by filing the bond (Sunday being the 12th) he did on Monday, the 13th, go to the office of the said W. T. Lenoir, Justice of the Peace, with the bond properly and sufficiently signed for the purpose of filing said bond with the said Justice of the Peace, but the said Justice

of the Peace was not in his office. On said day, the last day within which to file the bond, petitioner again went to the said Lenior's office with the bond to file, four times, twice in the forenoon and twice in the afternoon, but the Justice of the Peace was not in, nor could petitioner locate him, though he made inquiry and tried to find him;

"Petitioner, on the next morning, left the bond with the said Lenoir, and, being inexperienced in such matters, went on back to his work, thinking the matter was properly appealed.

"Petitioner did not know that Love had rendered the judgment, or had done any more than just sit with Lenoir on the trial. Love lived in the country, and while petitioner did not know where he was at the time or where his home was, he would have made effort to locate and leave the bond with him had he known he had rendered the judgment.

"Petitioner charges that without fault on his part he has been deprived in the manner aforesaid of his appeal. He avers that he was not at fault in said collision, but that his car was run into by the driver of plaintiff's automobile which was going at a rapid rate and while petitioner's automobile was practically at a standstill.

"Petitioner further shows that on the 17th day of August 1928, the plaintiff in said case through its attorney had the said James R. Love, Justice of the Peace, to issue an execution which has been levied on the automobile of petitioner by George Thomas, a deputy sheriff, who has advertised the same for sale on September 1, 1928, said automobile having been originally attached at the commencement of said suit, and still under the attachment.

"The judgment is wholly unjust.

"Your petitioner prays for a writ of certiorari to bring the case into the circuit court of Monroe county to be retried. He also prays for a supersedeas to stay all further proceedings on said judgment.

"This is the first application petitioner has made in this case for writs of certiorari and supersedeas."

J. H. Carr testified that when summoned by the officer with process issued from the court of Squire W. T. Lenoir, he stated to the officer that he wanted the case tried by Squire J. R. Love, but did not know the case had been transferred to Squire Love. That Lenoir and Love sat together in hearing the case, retired together, and brought in the judgment and that while Love announced the decision, he thought Love was merely sitting with Lenoir. That he went to Lenoir's office four times on Monday but did not find

him. Saw him Tuesday morning and left the bond with him and thought the case was appealed. Did not go to Lenoir's house. Does not say at what times on Monday he went to Lenoir's office. He says he told Squire Lenoir that he did not think it made any difference whether he got the bond in two days or not. Did not know he was required to file bond in two days and did not know it was too late on Tuesday until Mr. Burn, attorney for the Motor Company told him.

T. W. Peace, attorney for Carr, says he thought Love was merely sitting with Lenoir. That Carr had said he preferred to have Love try the case, but he did not know the warrant showed an endorsement of transfer by consent. That he told Carr he must file his bond by Monday, as that was the last day.

Harry T. Burn, of counsel for appellant, testified in part as follows:

"On Tuesday morning, August 14th, Squire Lenoir came to our office and said that Mr. J. H. Carr was in the office desiring to file an appeal bond, while the case was on the docket of Mr. J. R. Love, and asking what ought to be done about filing the bond. I stated to him that I didn't know any reason why he shouldn't accept the bond but to let it speak the truth and mark it filed as of the date it was actually being filed. I went with Squire Lenoir to his office, which is a short distance from our office, and found Mr. J. H. Carr there. I asked him if his attorney hadn't told him that he had to file his bond within two whole days after the judgment was rendered. He replied that he didn't think it made any difference as to when the bond was filed and that he didn't know that he had to get it in within any certain time. I pointed out to him that he hadn't even signed his own appeal bond. He admitted that he hadn't but said that his name was written in the body of the bond. I remember that Squire Lenoir upbraided Mr. Carr rather severely for not coming to his office at times when he was there the day before and stated that he was in his office about eight or ten hours on Monday and that the mill hands evidently thought that he never took off any time to eat. Yes, I remember seeing Squire Lenoir in his office on that Monday."

Manifestly there is no ground for certiorari here except as a substitute for appeal.

In McMurry v. Milan, 2 Swan, 178, it is said:

"The remedy by certiorari cannot be resorted to as a substitute for appeal except a case is made out in the petition that will show the appeal was defeated

"1. By the oppressive or erroneous act of the court or justice.

"2. By the wilful or negligent act of the clerk.

"3. By the contrivance or procurement of the adverse party.

"4. By inevitable accident.

"5. By the blameless misfortune of the petitioner."

Clearly the petition in this case can rest only on the last ground. Unless the right to appeal was lost by the blameless misfortune of the petitioner, he must fail. We do not think the mistake as to whether Squire Love or Squire Lenoir rendered the judgment was material. We are satisfied that if the appeal bond had been tendered to Squire Lenoir in proper time, it would have been accepted. The only objection made by him or by counsel for appellant on Tuesday was that the bond came too late. Lenoir upbraided Carr for not finding him on Monday, not for not finding Squire Love. The bond was left with Lenoir on Tuesday and not with Love. If it had been left with Lenoir on Monday the appeal would have been perfected or else the right to certiorari would have been perfect. But Carr did not make sufficient effort to find Lenoir. He says he called at the magistrate's office four times on Monday and yet Lenoir was in his office most of that day. He could have left the bond on the desk of the magistrate. He could have telephoned. He could have given the bond to his attorney and told him to file it. He could have gone to the house of the magistrate. Carr says he did not know that it made any difference when he filed the bond. Ignorance of law is no excuse. Besides his attorney says he told him Monday was the last day. There was carelessness and negligence somewhere. There certainly was not that exercise of diligence necessary to make out a case of blameless misfortune.

This may seem a hard case, but the merits in favor of the petitioner do not appear more clear and certain than in McMurry v. Milan, supra, and yet in that case the court said: "that sound and necessary policy of the law which requires every man to attend to his suits at a designated time, and that there should be an end to litigation, forbids that a judgment should be disturbed and the rights of parties unsettled under such circumstances as surround this case."

In the case of Copeland v. Cox, 5 Heisk., 171, the petition presented a strong showing of merits and the court said:

"Upon the face of the petition sufficient merits are disclosed to entitle the plaintiff in error to the writs prayed for. But the primary question to be determined is, has he shown suffi-

cient reasons for not appealing? For, unless he has been deprived of his right of appeal by inevitable accident, by the wrongful act of the justice or adverse party, or by his blameless misfortune, no matter how meritorious his defence may be, he must be repelled from court.''

See to the same effect Ammons v. Coker, 124 Tenn., 676; Wilson v. Wood Lbr. Co., 5 Higgins, 353; 11 Corpus Juris, 117.

In the case of Wilson v. Wood Lumber Co., 5 Higgins, 353, the petition set up that petitioner would have perfected his appeal from a justice within two days, but for the fact that he got lost in returning to his home after visiting his attorney to consult about the appeal and did not reach home until too late at night, because of his physical weariness, to go to the home of the justice two miles away and perfect his appeal. This was held insufficient.

Other authorities might be cited, but it is not considered necessary. The assignments of error are sustained and the action of the lower court reversed. The petition for certiorari will be dismissed. The defendant in error will pay the costs of the appeal.

Owen and Senter, JJ., concur.