**SPRINGDALE GARDENS, INC.,**
**Appellant,**

v.

**COUNTRYLAND DEVELOPMENT, INC.**
**and Gerald Hughes, d/b/a Hughes**
**Realty, Respondents.**

**No. 44783.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 24, 1982.

J. Kehlor Carr, Jr., House Springs, for appellant.

James E. Bowles, Hillsboro, for respondents.

REINHARD, Presiding Judge.

Plaintiff appeals from the granting of a motion for a directed verdict at the close of plaintiff's case. We affirm.

In 1975, plaintiff's president, Vincent Mueller, sought to purchase land for the development of a residential subdivision in Jefferson County. Gerald Hughes, president of defendant, Countryland Development, Inc. and owner of Hughes Realty Co., contacted Mueller and advised him that Countryland Development owned a 59.76 acre parcel for sale (hereinafter referred to as the Schneider tract). The two met in Hughes' real estate office where Hughes gave Mueller a preliminary plat (hereinafter referred to as the Rowland survey) prepared by a surveying company showing the Schneider tract could be subdivided into 171 lots, each lot containing 12,000 square feet and having appropriate streets and access. Hughes also gave Mueller a cost analysis of engineering and survey costs for developing the subdivision based on 171 lots and an out boundary survey showing only the boundaries of the Schneider tract (hereinafter referred to as the Hurtgen survey).

On January 5, 1976, defendant Countryland Development, Inc. entered into a contract with Mueller, whereby it agreed to convey the 59.76 acre Schneider tract. On February 10, Countryland conveyed this acreage to Springdale Gardens, Inc.[1] Subsequently, Mueller discovered an error in the northeast corner boundary line on the Rowland survey so that the tract was only suitable for division into 165 lots instead of 171. All parties concede that the Rowland survey contains an error, that the Hurtgen survey showing the outer boundaries of the Schneider tract was completely accurate and that plaintiff received title to 59.76 acres of land.

Plaintiff initially brought this action against the engineer, who prepared the Rowland survey, Countryland Development and Hughes Realty. Plaintiff's first amended petition on which it proceeded to trial, named only Countryland Development and Hughes Realty as defendants and sought to recover the additional surveying expenses and the value of the six raw lots alleging that it relied upon the Rowland survey to its detriment.

Vincent Mueller, Donald Roach, a real estate appraiser, and Robert Birnstill, a bank officer for Gravois Bank, testified for plaintiff. At the close of plaintiff's case, defendants filed a motion for a directed verdict alleging that there was no evidence that defendants knew the Rowland plat was incorrect or recklessly represented the plat as correct. Apparently, on this basis, the trial court granted defendants' motion. In reviewing the propriety of the trial court's ruling on such a motion, we apply the fundamental and settled rules that we consider all of the evidence in the light most favorable to the plaintiff, accept it as true, accord to plaintiff the benefit of all favorable inferences deducible from the evidence and reject all unfavorable inferences. *Barnett v. M & G Gas Co.,* 611 S.W.2d 370, 371 (Mo.App.1981).

■ On appeal, plaintiff asserts that it made a submissible case on either fraudulent misrepresentation or negligent misrepresentation. The elements of fraudulent misrepresentation are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his ignorance of the truth; (5) the speaker's intent that his statement be acted upon; (6) the hearer's ignorance of the falsity of the statement; (7) his reliance on the truth of the statement; (8) the hearer's right to rely on the statement; and (9) the hearer's consequent and proximate injury. *Cantrell v. Superior Loan Corp.,* 603 S.W.2d 627, 634 (Mo.App.1980).

■ Failure to establish any one of the essential elements is fatal to recovery. *Twiggs v. National Old Line Ins. Co.,* 581 S.W.2d 877, 881 (Mo.App.1979). Mueller testified that he had no knowledge "that

1. Springdale Gardens was incorporated on November 12, 1975 with Vincent Mueller its president. dent.

would indicate that Mr. Hughes knew there was anything wrong with that plat." Further, at the close of plaintiff's case, the following colloquy between plaintiff's counsel and the trial court took place:

> THE COURT: What evidence supports the conclusion that the Defendant knew that the representation was false or should have known that the representation was false?

> MR. CARR: Well, Your Honor, that is in the depositions, but the depositions haven't been read, yet. There is no direct evidence to that right now.

■ It is evident that plaintiff failed to present evidence of one of the elements of fraudulent misrepresentation and consequently, it failed to make a submissible case.

■ Neither did plaintiff make a submissible case of negligent misrepresentation. The elements of negligent misrepresentation differ from those of fraudulent misrepresentation in one major respect: while the latter requires proof that the defendant knew the statement was untrue or was reckless as to whether the statements were true or false, the former merely requires proof that the defendant failed to exercise reasonable care or competence to obtain or communicate true information. *Huttegger v. Davis,* 599 S.W.2d 506, 514 (Mo. Welliver, J.). In *Ligon Specialized Hauler, Inc. v. Inland Container Corp.,* 581 S.W.2d 906 (Mo. App.1979), this court in reinstating a jury verdict for plaintiff, recognized the tort of negligent misrepresentation relying on Restatement Torts, Second, § 552 which provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Defendant arranged for plaintiff, a transport company to haul a heavy die cutting machine. Defendant's employee misstated the weight of the machine by over ten tons and damages resulted to plaintiff when it attempted to haul the machine in an unsuitable truck. The evidence established that it was defendant's normal procedure to contact the home office if plant records were insufficient to determine the weight of an item to be shipped, and this policy was not followed. The court held that this was sufficient evidence to support the jury's finding of negligence. *See also Aluma Kraft Manufacturing Co. v. Elmer Fox & Co.,* 493 S.W.2d 378 (Mo.App.1973).

■ In the present case, the only evidence of negligence presented was on the part of the engineer who prepared the Rowland survey. We know of no legal theory to impute the surveyor's negligence to the defendants, in the circumstances of this case. The surveyor was neither an employee of Countryland Development nor Hughes Realty, but was an independent contractor.

Ordinarily, a defendant is liable to third persons for the negligent acts of independent contractors only where the defendant is negligent in failing to exercise reasonable care in the selection of a competent contractor. *Baker v. Scott County Milling Co.,* 323 Mo. 1089, 20 S.W.2d 494, 499 (1929). Here, there was no evidence that Hughes failed to

exercise reasonable care in selecting a competent surveyor. In fact, Mueller, who had thirty-five years in the construction business continued to use the same surveyor himself for several months after the sale.

There was no evidence that defendants had any special expertise or training in reading surveys so that defendants should have independently discovered the error. Indeed, Mueller testified that it was "fair" for Hughes to rely on the engineer as to the accuracy of the survey. There was no evidence that defendants were in the specific business of purchasing land, performing surveys and reselling to subdivision developers. In the circumstances of this case, plaintiff did not present evidence defendants failed to exercise reasonable care or competence in representing the plat as accurate.

 Finally, plaintiff asserts the trial court erred in overruling its motion to present additional evidence. The trial court granted defendants' motion for a directed verdict on May 22, 1981. Plaintiff did not file its motion to present additional evidence until June 8, 1981. In its motion, plaintiff alleged that the case should be reopened to allow Hughes' deposition into evidence.

It is well established that a court's decision to allow a party to present further evidence after the evidence is closed is a matter of discretion. Ordinarily, when there is no inconvenience to the court nor unfair advantage to one of the parties it would be an abuse of discretion upon the refusal to permit the introduction of material evidence which might substantially affect the merits of the case. *Matter of Estate of Viviano,* 624 S.W.2d 130, 133 (Mo. App.1981).

We find no abuse of discretion here. The time when counsel should have requested the court to reopen the case was when he admitted at the close of his case he had introduced no evidence of defendants' knowledge. This was not a case of a law-

yer's inadvertence or oversight, as in *Smith v. Ray M. Dilschneider, Inc.,* 283 S.W.2d 631, 635 (Mo.1955), but was a strategic decision by counsel not to call Hughes as an adverse witness nor to attempt to admit portions of his deposition as an admission against interest.

Affirmed.

SNYDER and CRIST, JJ., concur.